UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS CRAWFORD,

                              Plaintiff,

                                                                                             Case # 13-CV-6638-FPG

v.

                                                                                             DECISION & ORDER

WILLIAM HUGHES, et al.,

                              Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff Thomas Crawford ("Plaintiff") brings this action against Defendants William Hughes, Jason Roberts, Daniel Cheney, Christopher Wegner, Mark Bradt, and Kathleen Sault based on alleged violations of his constitutional rights while housed at Attica Correctional Facility ("Attica"), a prison administered by the New York State Department of Corrections and Community Supervision ("DOCCS"). ECF No. 1. Plaintiff seeks relief under 42 U.S.C. § 1983, 42 U.S.C. § 1981, and 42 U.S.C. § 1985.[1] *Id.* at 7.

In response to Plaintiff's Complaint, Defendant Bradt filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 25. Defendants Hughes, Roberts, and Sault answered the Complaint, *see* ECF Nos. 22, 23, and then filed a motion for summary judgment under Rule 56. ECF No. 31. Plaintiff, meanwhile, has filed two motions for temporary restraining orders. ECF Nos. 38, 43.

For the reasons stated below, the motion to dismiss filed by Defendant Bradt is granted, the motion for summary judgment filed by Defendants Hughes, Roberts, and Sault is denied without prejudice, and Plaintiff's motions for temporary restraining orders are denied.

---

[1]     Plaintiff also cites 18 U.S.C. § 241, 18 U.S.C. § 242, 18 U.S.C. § 371, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1391. ECF No. 1, at 7. However, 18 U.S.C. § 241, 18 U.S.C. § 242 and 18 U.S.C. § 371 are federal criminal statutes and therefore do not apply in this civil case. 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1391 involve jurisdiction and venue.

1

## BACKGROUND[2]

On September 6, 2013, while housed at Attica, Plaintiff made a request for "chow" and a request to attend Jummah prayer service. Plaintiff's request for chow was denied. At about 1:30pm, when Plaintiff was on his way to Jummah prayer service, Plaintiff approached Officer Christopher Wegner ("Wegner") and "asked him why he denied me chow. I explain[ed] that I had no food in my cell. He responded that he didn't give a fuck."

After Plaintiff returned from Jummah services, Plaintiff was confronted by Wegner. Wegner searched Plaintiff and then "threw a Muslim oil on the floor to provoke me [Plaintiff]." When Wegner was finished with the search, Plaintiff turned to face him. Wegner said to Plaintiff, "You talk to me like I was a bitch." Plaintiff replied that he didn't know what Wegner was talking about, and then Wegner struck Plaintiff in the face with his fist. Plaintiff's glasses shattered and both lenses popped out.

Plaintiff walked away, but then Wegner took one of Plaintiff's religious books that Wegner had removed during the search and placed it on a desk. Plaintiff asked Wegner for the book, and Wegner replied "come and get it." Plaintiff asked Wegner "what does the book have to do with this?" Wegner replied "What do you think nigger!" Wegner threw the book down the hall, and Plaintiff "told [Wegner] to come to my cell and call me a nigger." Both Plaintiff and Wegner walked to Plaintiff's assigned cell.

Once inside Plaintiff's cell, Wegner struck Plaintiff in the eye "about 8 more times." Plaintiff states he did not strike Wegner at all and that Wegner "had total control of the assault he [Wegner] initiated." An alarm was activated, and Sergeant Daniel Cheney ("Cheney") and others came to Plaintiff's cell. Cheney had a hand-held video camera. Plaintiff was handcuffed, led out of his cell, and escorted to the "ER Room."

---

[2] The following factual allegations are drawn from Plaintiff's Complaint (ECF No. 1).

Nurse Kathleen Sault ("Sault") examined Plaintiff. In addition to Plaintiff's eye injury, Plaintiff's right pinky fingernail had broken half-way off as a result of Wegner's attempt to pull Plaintiff out of his cell during the altercation. Sault gave Plaintiff an ice pack and iodine for the fingernail injury, but she denied Plaintiff medical attention for his eye injury. There was no follow-up examination. Plaintiff alleges that Sault "made attempts to conceal the assault by stating I [Plaintiff] had no comment about the injury." Plaintiff also alleges that Sault filed a false Report of Injury in Wegner's file even though, as Plaintiff asserts, Wegner's only injury was "self-inflicted marks on his face where he falsely claimed I bit him on his cheek."

As a result of the altercation between Plaintiff and Wegner, Plaintiff was charged with "assault, violent conduct, creating a disturbance, direct order and interference." On September 12, 2013, a hearing was conducted by Deputy Superintendent of Security William Hughes ("Hughes"). Hughes denied Plaintiff's requests for Sault, Cheney, and the officers who packed up Plaintiff's broken glasses after the incident to attend the hearing. Prior to the hearing, Plaintiff had informed Hearing Assistant Jason Roberts ("Roberts") about certain documents that Plaintiff wanted for the hearing, but Roberts did not bring those documents directly to Plaintiff. Plaintiff was found guilty on all charges.

Plaintiff filed a grievance and complaint to Superintendent Mark Bradt ("Bradt") regarding the incident, but Bradt did not refer the incident to the Inspector General's Office. Bradt also reviewed the Use of Force Report that had been generated as a result of the altercation between Plaintiff and Wegner. Plaintiff alleges that this Use of Force Report contains the false version of the incident that was fabricated by Wegner and Cheney. However, "any investigation by [Bradt] was inadequate with the intent to conceal Defendant[] Wegner's misconduct because the video camera held by Sergeant Cheney on 9-6-13 3:30pm would show me exiting my cell."

3

By failing to correct the false report, Plaintiff alleges that Bradt "became a party to the false report" and "enjoin[ed] to the corruption" of the other Defendants.

## DISCUSSION

### I. Motion to Dismiss

Defendant Bradt has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 25. The Court agrees that Plaintiff's Complaint fails to state a claim against Bradt, and therefore grants Bradt's motion to dismiss.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, and will be granted if the plaintiff has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court reviewing a motion to dismiss under Rule 12(b)(6) "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Because Plaintiff is proceeding *pro se*, the Court will "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). "Even in a *pro se* case,

however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Here, Plaintiff's only allegation against Bradt is that Bradt failed to adequately respond after receiving Plaintiff's grievance and reviewing the Use of Force Report regarding the altercation between Plaintiff and Wegner. ECF No. 1, at 10. Specifically, Plaintiff states that "any investigation by [Bradt] was inadequate with the intent to conceal Defendant[] Wegner's misconduct because the video camera held by Sergeant Cheney on 9-6-13 3:30pm would show me exiting my cell." *Id.* By failing to adequately investigate and remedy the false report, Plaintiff alleges that Bradt "became a party to the false report" and "enjoin[ed] to the corruption" of the other Defendants. *Id.*

These allegations fail to state a claim against Bradt under § 1983, § 1981, or § 1985. To state a claim under § 1983, a plaintiff must show that he or she was deprived of a right under the U.S. Constitution or federal law. *See, e.g., Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). A prison official's failure to conduct an adequate investigation into a prisoner's grievance, in and of itself, does not amount to a constitutional violation. *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment."); *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 344 (N.D.N.Y. 2010); *Crenshaw v. Hartman*, 681 F. Supp. 2d 412, 416-17 (W.D.N.Y. 2010).

Plaintiff's allegations are also insufficient to hold Bradt liable under § 1983 for the actions of the other Defendants in this case. Under § 1983, supervisory officials may only be held liable for constitutional violations in which they were "personally involved." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Plaintiff's allegation that Bradt inadequately

investigated Plaintiff's grievance, without more, is insufficient to establish personal involvement. *Henry v. Lempke*, 680 F. Supp. 2d 461, 464 (W.D.N.Y. 2010).

Plaintiff also fails to state a claim against Bradt under § 1981. "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Furthermore, similar to claims under § 1983, "[a] claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). Here, Plaintiff does not provide any factual allegations to show that Bradt intended to discriminate against Plaintiff on the basis of race. The alleged failure of Bradt to thoroughly investigate Plaintiff's grievance or correct a false report, without more, is insufficient to establish Bradt's personal involvement in the conduct of other Defendants. *Henry*, 680 F. Supp. 2d at 464.

Plaintiff's claim against Bradt under § 1985 is flawed for similar reasons. Section 1985(3) provides a cause of action for damages to those injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3); *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 827 (1983). In order to state a claim under § 1985, a plaintiff must allege the following four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured

in his person or property or deprived of any right of a citizen of the United States." *Mian*, 7 F.3d at 1087-88 (citing *United Bhd. of Carpenters*, 463 U.S. at 828-29). The conspiracy at issue must be motivated "by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* at 1088 (quoting *United Bhd. of Carpenters*, 463 U.S. at 829) (internal quotations omitted).

Here again, Plaintiff's only allegation against Bradt is that Bradt failed to adequately investigate Plaintiff's grievance and failed to correct a false report regarding the altercation between Plaintiff and Wegner. ECF No. 1, at 10. Plaintiff's claim that Bradt "became a party to the false report" and "enjoin[ed] to the corruption" of the other Defendants is conclusory, and is insufficient to establish the existence of a conspiracy. *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *see also Malcolm v. Honeoye Falls-Lima Educ. Ass'n*, 678 F. Supp. 2d 100, 107 (W.D.N.Y. 2010).

Because Plaintiff fails to state a claim against Bradt under §§ 1983, 1981, or 1985, Bradt's motion to dismiss is granted.

## II. Motion for Summary Judgment

After answering Plaintiff's Complaint, Defendants Hughes, Roberts and Sault filed a motion for summary judgment. ECF No. 31. Because the arguments contained in Defendants' summary judgment motion are not ripe for consideration at this stage of the litigation, the motion is denied without prejudice.

Although a motion for summary judgment may be filed "at any time until 30 days after the close of all discovery," Fed. R. Civ. P. 56(b), summary judgment is generally not appropriate until after some discovery has occurred. *Nelson v. Deming*, No. 6:13-CV-06252 EAW, 2015 WL 6452386, at *5 (W.D.N.Y. Sept. 30, 2015). In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986), the Supreme Court explained that the purpose of summary judgment is to allow for the disposition of a case "after adequate time for discovery" has elapsed. *Id.* Indeed, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).

In those rare cases where summary judgment is appropriate even though no discovery has occurred, it is evident from the face of the complaint that discovery would be futile. *See Nelson*, 2015 WL 6452386, at *5 (W.D.N.Y. Sept. 30, 2015) (addressing defendants' pre-discovery motion for summary judgment because "[t]he facts contained in the attachments to [p]laintiff's own complaint contradict his claim for deliberate medical indifference"); *Parra v. Wright*, No. 11-CV-6270 CJS, 2013 WL 6669235, at *7 (W.D.N.Y. Dec. 18, 2013) (denying the bulk of defendants' motion for summary judgment because no discovery had taken place, but addressing an argument regarding plaintiff's failure to exhaust administrative remedies because "the facts regarding [p]laintiff's efforts at exhaustion are not disputed, and it does not appear that any amount of discovery would change the outcome of that portion of the application").

Here, Defendants' motion for summary judgment was filed prior to any discovery. ECF No. 31. In the motion, Defendants provide no explanation or argument as to why this is one of "the rarest of cases" where summary judgment may be granted prior to discovery. *Hellstrom*, 201 F.3d at 97. On the contrary, Defendants' motion "appears to be an attempt to nullify the well-pleaded factual allegations in Plaintiff's Complaint after conducting one-sided discovery." *Fowler v. Fischer*, No. 13-CV-6546-FPG, 2016 U.S. Dist. LEXIS 16278, at *4 (W.D.N.Y. Feb. 10, 2016). In his opposition to summary judgment, Plaintiff points out that "the discovery is not complete and it would be premature for this Court to give a[n] order in favor [of] Defendants." ECF No. 34, at 3. Defendants did not file any reply brief, and therefore failed to respond to

Plaintiff's argument that summary judgment would be premature. Because Defendants' motion improperly seeks summary judgment prior to discovery, it is denied without prejudice.[3] *Faust v. Jun*, No. 6:14-CV-6702, 2016 U.S. Dist. LEXIS 15444, at *4 (W.D.N.Y. Feb. 9, 2016); *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment.") (citing *Celotex*, 477 U.S. at 326) (quotations in original).

### III. Motions for Temporary Restraining Orders

Plaintiff has filed two motions for temporary restraining orders. ECF Nos. 38, 43. Because neither motion provides a sufficient basis for the Court to grant the relief Plaintiff has requested, both motions are denied.

Plaintiff's first motion for a temporary restraining order, which was filed while Plaintiff was being housed at Wende Correctional Facility ("Wende"), alleges that unnamed Wende employees have harassed and threatened Plaintiff in order to hinder his ability to pursue this case. ECF No. 38. Plaintiff seeks an order "to [r]estrain Defendants and their [a]gents to stop housing me at Wende Corr[ectional] Fac[ility] and Attica Corr[ectional] Fac[ility]." *Id.*

After filing the first motion for a temporary restraining order, Plaintiff was transferred to Great Meadow Correctional Facility ("Great Meadow"). ECF No. 41, Ex. A; *see also* ECF No. 42. Plaintiff's motion to be transferred away from Wende is therefore moot. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison

---

[3] It is important to note that while the Court has discretion to allow Defendants a second bite at the apple, it is under no obligation to do so. *Robinson v. Henschel*, No. 10 CIV. 6212 PGG, 2014 WL 1257287, at *9 (S.D.N.Y. Mar. 26, 2014) (denying defendants' successive motion for summary judgment on exhaustion grounds as "procedurally improper"); *Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004); *Essex Ins. Co. v. Foley*, 827 F. Supp. 2d 1326, 1329 (S.D. Ala. 2011) (noting that "no federal litigant has an absolute right to bring multiple, piecemeal motions for summary judgment" and emphasizing the importance of not allowing parties to "treat their initial summary judgment motions as a 'dry run' which they would have an opportunity to redo or supplement—at considerable additional cost to opposing parties and at a considerable drain to scarce judicial resources").

facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

Plaintiff's second motion for a temporary restraining order, which was filed after Plaintiff moved to Great Meadow, alleges that a John Doe officer at Great Meadow approached Plaintiff in a threatening manner and then searched Plaintiff under the false pretense that Plaintiff was on "keeplock." ECF No. 43. While conducting this search, Plaintiff alleges that the John Doe officer at Great Meadow "[s]queezed my penis steadily." *Id.* Plaintiff alleges this officer intended to provoke Plaintiff into a physical confrontation. *Id.* Further, Plaintiff alleges that there has been an effort to place him in harm's way by putting him in contact with his "known enemies." ECF No. 44. Plaintiff seeks an order "to stop Defendants['] agents and unknown agents from moving me cell to cell, block to block in attempts to place me with enemies they know I have." *Id.*

The Court cannot grant Plaintiff the relief he requests in his second motion for two basic reasons. First, "[t]o prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Mitchell v. New York State Dep't of Corr. Servs.*, No. 06-CV-6278, 2011 WL 6148598, at *1 (W.D.N.Y. Oct. 19, 2011) (quoting *Candelaria v. Baker*, No. 00-CV-0912E(SR), 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006)). Plaintiff has not demonstrated any connection between his treatment at Great Meadow and the events at Attica that gave rise to this case. *See* ECF Nos. 43, 44. Second, and more fundamentally, a court may not issue an injunction against someone unless the court has acquired valid personal jurisdiction over that person. *Weitzman v. Stein*, 897 F.2d 653, 658-59 (2d Cir. 1990); *Tobin v. Doe*, No. 3:04-CV-952 (SRU), 2006 WL 680507, at *3 (D. Conn. Mar. 15, 2006). The Court does not have jurisdiction over any Great Meadow employees in this case, none of whom are parties to this action.

## CONCLUSION

For the reasons stated above, the motion to dismiss filed by Defendant Bradt (ECF No. 25) is GRANTED, the motion for summary judgment filed by Defendants Hughes, Roberts and Sault (ECF No. 31) is DENIED WITHOUT PREJUDICE, and the motions for temporary restraining orders filed by Plaintiff (ECF Nos. 38, 43) are DENIED.

IT IS SO ORDERED.

Dated: March 30, 2016
  Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court