```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

THOMAS CRAWFORD,

        Plaintiff,

    -v-                          6:13-CV-06638 (MAT)
                                      **DECISION AND ORDER**

OFFICER CHRISTOPHER WEGNER,
SERGEANT CHENEY, NURSE K. SAULT,
INMATE ASSISTANT J. ROBERTS, and
DEP. SUPT. SECURITY HUGHES,

        Defendants.

**I.    Introduction**

The instant action arises out of *pro se* plaintiff Thomas Crawford's ("Plaintiff") imprisonment at the Attica Correctional Facility ("Attica"). Currently pending before the Court is a motion for partial summary judgment filed by Defendants Sergeant Cheney, Nurse K. Sault ("Nurse Sault"), Inmate Assistant J. Roberts ("Officer Roberts"), and Dep. Supt. Security Hughes ("Deputy Superintendent Hughes") (collectively "Moving Defendants"). Docket No. 105. In addition, Plaintiff has filed objections to two non-dispositive orders entered by Magistrate Judge Jonathan W. Feldman. *See* Docket Nos. 107, 122, 123. For the reasons discussed below, Moving Defendants' motion for partial summary judgment is granted and Plaintiffs' objections to Judge Feldman's orders are overruled.

## II.  Background

The following facts are taken from the respective statements of fact, affidavits, and exhibits submitted by plaintiff and defendant, as well as the docket in this matter.  As required on a motion for summary judgment, the Court has considered all evidence and testimony in the light most favorable to Plaintiff, and has drawn all inferences in his favor.

On September 6, 2013, Plaintiff was housed at Attica.  Plaintiff testified at his deposition that on that date, Defendant Officer Christopher Wegner ("Officer Wegner") was compiling a list of inmates who wanted to attend "chow" and religious services.  According to Plaintiff, he indicated to Officer Wegner that he wanted to attend lunch and Jumu'ah prayer service.[1]  However, when the time came to leave the cell block for lunch, Plaintiff's cell was not unlocked.  According to Plaintiff, Officer Wegner said that Plaintiff was not the list.

At approximately 1:00 p.m., Officer Wegner unlocked Plaintiff's cell so he could attend religious services.  Plaintiff testified that he then confronted Officer Wegner and asked him why he hadn't let Plaintiff out for lunch.  Officer Wegner told Plaintiff that he had made a mistake, and Plaintiff replied that Officer Wegner had gone past his cell too quickly while making the list.  Plaintiff then attended his prayer service.

---

[1] Jumu'ah is a Muslim prayer service held on Fridays.

Upon his return from prayer services, Plaintiff again encountered Officer Wegner. According to Plaintiff, Officer Wegner frisked him and confiscated rolling papers, oil, and a religious book that Plaintiff had on him. Plaintiff testified that Officer Wegner then made a partial fist with his right hand and struck Plaintiff in the face, causing Plaintiff's eyeglasses to fly off. Plaintiff further testified that Officer Wegner stated that Plaintiff had "talked to him like he was a bitch." Docket No. 105-3 at 36.

After striking Plaintiff, Officer Wegner told him to go lock into his cell. Plaintiff testified that he asked to have his religious book returned to him and that Officer Wegner refused to return the book and called Plaintiff a "nigger." *Id*. at 38. Plaintiff then told Officer Wegner to "give [him] a one on one" and to "come to [his] cell and call [him] a nigger." *Id*. Plaintiff returned to his cell, where he testified he was waiting to fight Officer Wegner. Officer Wegner followed Plaintiff to his cell, and according to Plaintiff, they "wrestled around" and Officer Wegner hit him in the eye eight or nine times. Plaintiff testified that Officer Wegner then tried to pull Plaintiff from his cell by one leg, but was unsuccessful in doing so.

Other corrections officers, including Sergeant Cheney, responded to the altercation between Plaintiff and Officer Wegner. Plaintiff testified that the fight was over by the time Sergeant

Cheney arrived. Sergeant Cheney videotaped Plaintiff being escorted to the facility medical unit, where Plaintiff received medical treatment.

Plaintiff was seen by Nurse Sault in the facility medical unit. Nurse Sault filled out an inmate injury report and a use-of-force report. Nurse Sault indicated in the inmate injury report that Plaintiff's left eye was swollen and red and that the nail on his left pinky finger had been broken. Nurse Sault provided Plaintiff with ice for his eye injury and cleansed and bandaged his finger injury. Nurse Sault submitted a sworn declaration to this Court dated February 28, 2015, in which she stated that she did not believe that Plaintiff's injuries were serious or required any additional treatment. Docket No. 31-3 at ¶ 5. Plaintiff testified that his finger injury healed within a week and that he had no limitations on the use of his hand. With respect to his left eye, Plaintiff testified that it took two months for this injury to fully heal and that he still suffers from a "floater," which he describes as spider web-like lines in his field of vision.

As a result of the altercation between Plaintiff and Officer Wegner, Plaintiff was issued a misbehavior report. The misbehavior report states that Plaintiff confronted Officer Wegner, refused several direct orders to lock into his cell, and struck Officer Wegner in the left side of his face with a closed fist. The misbehavior report goes on to state that Plaintiff grabbed Officer

Wegner in a "bear hug type hold" and bit him on the face. Docket No. 111 at 24. According to the misbehavior report, Plaintiff then assumed a fighting stance, at which point Officer Wegner struck him in the face with a closed fist, causing him to drop to the floor and become compliant.

A disciplinary hearing regarding the altercation was held by Deputy Superintendent Hughes. Officer Roberts was assigned to assist Plaintiff with the disciplinary hearing. Plaintiff testified at his deposition that Officer Roberts failed to provide adequate assistance because he did not obtain the videotape of Plaintiff's escort from his cell to the facility medical unit. Plaintiff further testified that Deputy Superintendent Hughes also refused to provide Plaintiff with the videotape and that he refused to let him call Sergeant Cheney, Officer Roberts, and Nurse Sault as witnesses. Plaintiff was found guilty of all the charges against him and sentenced to 24 months in the special housing unit ("SHU") and 12 months loss of good time. After an administrative appeal, the sentence was reduced to 12 months in the SHU.

**III. Discussion**

    **A. Moving Defendants' Motion for Partial Summary Judgement**

        **1. Legal Standard**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any

5

material fact and the movant is entitled to judgment as a matter of law. When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *See Scott v. Harris*, 550 U.S. 372, 380 (2007), citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). A party opposing a motion for summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87).

Here, Moving Defendants seek summary judgment in their favor as to Plaintiff's claims against Sergeant Cheney, Nurse Sault, Officer Roberts, and Deputy Superintendent Hughes. Officer Wegner has not sought summary judgment on Plaintiff's claim against him. For the reasons set forth below, the Court grants Moving Defendants' motion.

**2.  Claim Against Sergeant Cheney**

Moving Defendants argue, and the Court agrees, that Plaintiff has failed to identify any evidence to support the claim that

6

Sergeant Cheney violated his constitutional rights. Accordingly, Sergeant Cheney is entitled to judgment in his favor.

The only factual allegations against Sergeant Cheney in Plaintiff's complaint are that he responded to the fight between Plaintiff and Officer Wegner and that he videotaped Plaintiff being escorted to the facility medical unit. Plaintiff testified multiple times at his deposition that the fight had ended by the time Sergeant Cheney arrived on the scene. Plaintiff further testified that nothing wrongful or illegal happened during the escort to the medical unit videotaped by Sergeant Cheney.

To maintain a civil rights action against an individual defendant under 28 U.S.C. § 1983 ("Section 1983"), "a plaintiff must establish a given defendant's personal involvement in the claimed violation." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004). Here, there is no admissible evidence to support the conclusion that Sergeant Cheney violated Plaintiff's constitutional rights. Sergeant Cheney cannot be held liable for failing to intervene in a fight that Plaintiff concedes he did not witness, or for videotaping an escort that Plaintiff concedes was lawful.

At his deposition, Plaintiff claimed that Sergeant Cheney was liable for the alleged violation of his constitutional rights because he knew that Officer Wegner had fabricated the misbehavior report. In his opposition to Moving Defendants' motion, Plaintiff

7

expands on this allegation, and attempts to claim that Officer Wegner, Sergeant Cheney, Nurse Sault, Officer Roberts, and Deputy Superintendent Hughes were involved in some manner of conspiracy to violate his rights. However, Plaintiff has failed to identify any evidence to support this claim beyond his own speculation. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Warr v. Liberatore*, 270 F. Supp. 3d 637, 650 (W.D.N.Y. 2017) (internal quotation omitted). "[T]o survive a motion for summary judgment, the non-moving party's evidence of a § 1983 conspiracy-must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id*. (internal quotation omitted).

In this case, the record contains no evidence whatsoever of an agreement between Defendants to violate Plaintiff's rights. The sole factual basis for Plaintiff's conspiracy claim appears to be that Sergeant Cheney and Nurse Sault were somehow aware that Officer Wegner was lying about the altercation. However, as Plaintiff concedes, neither Sergeant Cheney nor Nurse Sault was present during the altercation, and they therefore had no personal knowledge about what did or did not happen. Mere "unsubstantiated

8

speculation" such as Plaintiff offers in this case is "insufficient to show that a genuine factual issue exists" with respect to a Section 1983 conspiracy claim. *Ostensen v. Suffolk Cty.*, 236 F. App'x 651, 653 (2d Cir. 2007) (internal quotation omitted). Accordingly, Plaintiff's assertion of a conspiracy, without any factual support, does not save his claims against Sergeant Cheney (or any of the other Moving Defendants).

### 3. Claim Against Officer Roberts

Plaintiff has asserted a due process claim against Officer Roberts for his allegedly inadequate assistance with respect to Plaintiff's disciplinary hearing. The Court agrees with Moving Defendants that this claim also lacks any support in the record.

A prisoner has "a right to assistance in preparing for a prison disciplinary hearing." *Crenshaw v. Sciandra*, 766 F. Supp. 2d 478, 483 (W.D.N.Y. 2011). However, the scope of this right is "significantly limited" and "falls far short of the right to counsel that the Sixth Amendment guarantees to criminal defendants." *Id.* (internal quotation omitted). An assistant is required only to perform investigatory tasks that the inmate himself is unable to perform, and "is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel in a prison disciplinary proceeding, assistance to which a prisoner is not entitled." *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993). The Second Circuit has described an

inmate's right to assistance as "qualified" and explained that any violations thereof must be reviewed for harmless error. *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009).

In this case, Plaintiff's specific complaint against Officer Roberts is that when he obtained the documents Plaintiff had requested, he provided them to the hearing officer (Deputy Superintendent Hughes) rather than providing them directly to Plaintiff. However, Plaintiff acknowledged on the record at his disciplinary hearing that Deputy Superintendent Hughes provided Plaintiff with the documents six days prior to the disciplinary hearing. Plaintiff's rights were not violated because he received the documents he requested from the hearing officer rather than directly from Officer Roberts. *See Silva*, 992 F.2d at 22 (finding no violation of the right to assistance where assistant's failure to report results of investigation did not hinder inmate's ability to provide a defense). Moreover, even had Officer Roberts provided inadequate assistance, such an error would have plainly been harmless, inasmuch as Plaintiff received the documents at issue in advance of the hearing and with adequate time to prepare his defense. Plaintiff acknowledged on the record at the disciplinary hearing that he had in fact received the documents he wanted. *See* Docket No. 31-4 at 69.

Plaintiff also claims that Officer Roberts failed to obtain a copy of the videotape made by Sergeant Cheney of Plaintiff being

10

escorted to the medical unit. However, Plaintiff not identified any prejudice that flowed from the supposed absence of this evidence. Plaintiff acknowledged under oath at his deposition that the videotape did not begin until after the fight was already over. To the extent that Plaintiff maintains the videotape would have showed that he was in his cell when Sergeant Cheney arrived, the hearing transcript shows that Officer Wegner acknowledged on the record that the incident took place in the doorway of Plaintiff's cell and that Plaintiff was in the cell at the end of the fight. *See* Docket 31-4 at 63-64. Because Plaintiff's location at the end of the fight was undisputed, Plaintiff did not need the videotape to demonstrate it. Plaintiff has not identified any other relevant information that could have been shown by the videotape, which recorded only the undisputedly uneventful escort to the facility's medical unit. Any error by Officer Roberts in allegedly failing to obtain this videotape was therefore harmless. Accordingly, Officer Roberts is entitled to summary judgment as to Plaintiff's claim against him.

### 4. Claim Against Deputy Superintendent Hughes

Plaintiff has asserted a due process claim against Deputy Superintendent Hughes, who functioned as the hearing officer at Plaintiff's disciplinary hearing. The Court finds that no reasonable factfinder could hold in Plaintiff's favor on this claim.

"Prison disciplinary proceedings are not part of a criminal prosecution" and as such "the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "Rather, to comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Williams v. Menifee*, 331 F. App'x 59, 60 (2d Cir. 2009) (internal quotation omitted).

In this case, Plaintiff maintains that Deputy Superintendent Hughes violated his right to due process by failing to obtain a copy of the videotape made by Sergeant Cheney and by not allowing him to call Sergeant Cheney, Officer Roberts, and Nurse Sault as witnesses. Plaintiff has failed to identify evidence sufficient to establish a due process violation.

Turning first to the issue of the videotape, as discussed above, there is no basis to conclude that the videotape would have contained any evidence relevant to the charges against Plaintiff. The videotape began after the fight between Plaintiff and Officer Wegner had already concluded. Moreover, the sole fact that Plaintiff claims the videotape would have shown (that he was in his

12

cell when Sergeant Cheney arrived) is undisputed - Officer Wegner testified that at the end of the fight, Plaintiff fell into his cell. Deputy Superintendent Hughes had no constitutional obligation to obtain evidence that was not relevant to the issues before him. *See Brooks v. Prack*, 77 F. Supp. 3d 301, 318 (W.D.N.Y. 2014) ("a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony or evidence") (*citing Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)).

Turning to the issue of witnesses, "[t]he Supreme Court has stated that disciplinary hearing officers must have the discretion to deny witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of necessity, and other hazards particular to each case." *Id.* (internal quotation omitted). In this case, Deputy Superintendent Hughes denied Plaintiff's request to call Sergeant Cheney on the basis that Sergeant Cheney did not arrive until the fight was over and had provided a written memo indicating he had no personal knowledge of the incident. *See* Docket No. 31-4 at 66-67. Deputy Superintendent Hughes' conclusion that Sergeant Cheney's testimony was unnecessary was reasonable, and constitutes a valid basis for denying Plaintiff's request. *See Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (finding a rational basis for hearing officer to conclude that testimony was irrelevant or unnecessary where proposed witnesses were not present at incident).

13

With respect to Officer Roberts, it is not clear from the hearing transcript that Plaintiff ever informed Deputy Superintendent Hughes that he wished to call Officer Roberts as a witness, as opposed to objecting to his assistance. Moreover, Deputy Superintendent Hughes explained to Plaintiff that his objection to Officer Roberts' assistance had been noted, and confirmed that Plaintiff had in fact ultimately received the documentation he requested. Having Officer Roberts (who was not a witness to the fight at issue and had no personal knowledge thereof) testify would have served no purpose.

Finally, with respect to Nurse Sault, there is no indication that Plaintiff ever informed Deputy Superintendent Hughes that he wished to call her as a witness. To the contrary, Deputy Superintendent Hughes reviewed with Plaintiff his list of witnesses, which did not include Nurse Sault. *See* Docket 31-4 at 47-50. Moreover, at the end of the hearing, Deputy Superintendent Hughes asked Plaintiff what other testimony he wanted to submit and Plaintiff stated "that's it, I'm finished" with no request for or mention of Nurse Sault. *Id.* at 69. Deputy Superintendent Hughes cannot be faulted for not calling a witness who was not identified by Plaintiff. *See Dixon v. Goord*, 224 F. Supp. 2d 739, 745 (S.D.N.Y. 2002) (finding no due process violation where hearing officer failed to call witness insufficiently identified by plaintiff).

For the foregoing reasons, on the record before the Court, no reasonable factfinder could conclude that Deputy Superintendent Hughes violated Plaintiff's right to due process. Accordingly, the Court grants judgment in favor of Deputy Superintendent Hughes on this claim.

### 4. Claim Against Nurse Sault

Plaintiff claims that Nurse Sault was deliberately indifferent to his medical needs. The Court finds that this claim is unsupported by the evidence of record.

In order to establish a constitutional violation related to a denial of medical care, "a prisoner must prove deliberate indifference to [his] serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation omitted). "This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

Moving Defendants argue, and the Court agrees, that Plaintiff cannot satisfy either the objective or subjective elements of his claim in this case. Turning first to the object prong, Plaintiff's minor injuries (a swollen eye and a broken pinky nail) do not constitute serious medical needs, inasmuch as they were not

"condition[s] of urgency" that could reasonably be expected to "produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation omitted). Courts in this Circuit have consistently held that neither minor finger injuries nor minor eye injuries meet this standard. *See, e.g., Dallio v. Hebert*, 678 F. Supp. 2d 35, 60 (N.D.N.Y. 2009) (finding two black eyes and a headache, among other injuries, insufficient to establish serious medical need); *Barrett v. Goldstein*, No. 07CV2483 RJDLB, 2009 WL 1873647, at *3 (E.D.N.Y. June 29, 2009) (finding that a broken finger does not constitute a serious medical need and collecting cases to that effect).

Plaintiff also cannot show that Nurse Sault was deliberately indifferent to his medical needs. It is undisputed that Nurse Sault treated Plaintiff, providing him with ice for his eye and cleansing and bandaging his finger wound. Plaintiff acknowledged at his deposition that this care was adequate, but claimed that Nurse Sault did not know the true extent of his injuries. However, Nurse Sault indicated in her sworn declaration that, in her medical judgment, Plaintiff's injuries were minor and did not require follow up care. Plaintiff's disagreement with Nurse Sault's assessment of the seriousness of his injuries and the appropriate treatment is insufficient to demonstrate deliberate indifference. *See Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004)

(explaining that the Constitution is not implicated by "a disagreement over a treatment plan").

Because Plaintiff cannot establish either the objective or subjective elements for a claim of denial of medical treatment, no rational factfinder could hold for him on this claim. Nurse Sault is therefore entitled to judgment in her favor.

**B.  Plaintiffs' Objections to Judge Feldman's Orders**

Plaintiff has filed objections to two non-dispositive orders entered by Judge Feldman. First, Plaintiff objects to Judge Feldman's August 31, 2017 Decision and Order (the "August 31 Decision") (Docket No. 101) denying as moot two motions for miscellaneous relief filed by Plaintiff. *See* Docket No. 107. Second, Plaintiff objects to Judge Feldman's March 20, 2018 Decision and Order (the "March 20 Decision") (Docket No. 119) denying three discovery motions filed by Plaintiff and denying in part and granting in part a fourth such motion.

Pursuant to 28 U.S.C. § 636(b)(1)(A), Judge Feldman was designated to hear and determine all non-dispositive pretrial matters in this case. His decisions are subject to reconsideration by this Court only if there are "clearly erroneous or contrary to law." *Id*. "Discovery disputes are quintessential examples of such non-dispositive pretrial issues." *Progress Bulk Carriers v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc*., 2 F. Supp. 3d 499, 502 (S.D.N.Y. 2014).

17

Here, Plaintiff has not met the standard for reconsideration with respect to either of Judge Feldman's orders. Turning first to the August 31 Decision, Judge Feldman denied Plaintiff's motions for miscellaneous relief as moot because Plaintiff agreed, on the record at a status conference, that those motions were moot and could be withdrawn. Plaintiff's objections (Docket No. 107) do not contest the facts underlying that August 31 Decision and do not demonstrate that Judge Feldman's conclusions were clearly erroneous or contrary to law.

Turning to the March 20 Decision, as a threshold matter, Plaintiff's objections (Docket Nos. 122 and 123) are untimely, having been filed on May 14, 2018 and May 23, 2018, respectively. Federal Rule of Civil Procedure 72(a) unambiguously provides that a party's objection to a magistrate judge's non-dispositive order must be filed "within 14 days of being served with a copy." Plaintiff was mailed a copy of the March 20 Decision on March 20, 2018 (*see* Docket No. 119) but did not file any objections until nearly two months later. The untimeliness of Plaintiff's objections is sufficient standing alone to justify denial. Moreover, Plaintiff's objections, which consist of nothing more than reiterations of the arguments considered by Judge Feldman, do not demonstrate that the March 20 Decision is clearly erroneous or contrary to law.

For the foregoing reasons, Plaintiff has not established that reconsideration of the August 31 Decision or the March 20 Decision is warranted. His objections to Judge Feldman's determinations are accordingly denied.

**IV. Conclusion**

For the reasons set forth above, the Court grants the Moving Defendants' motion for summary judgment (Docket No. 105). Plaintiff's claims against Sergeant Cheney, Officer Roberts, Deputy Superintendent Hughes, and Nurse Sault are dismissed, and the Clerk of the Court is instructed to remove the listed individuals as defendants in this case. Plaintiff's objections to Judge Feldman's non-dispositive orders (Docket Nos. 107, 122, 123) are denied.

Plaintiff's excessive use of force claim against Officer Wegner remains pending and appears to be trial ready. This matter shall be transferred to the Hon. Frank P. Geraci, Chief United States District Judge, for all further proceedings.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated: June 22, 2018
Rochester, New York